IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JENNIFER GAMBOA AND                                                             PLAINTIFFS
MICHAEL GAMBOA

V.                                                      CIVIL ACTION NO.: 3:10-cv-416-DPJ-FKB

GRACE PAINT COMPANY, INC.;                                                     DEFENDANTS
WILLIAM C. GRACE, II, individually and
in his official capacities; ANGEE D. GRACE,
individually and in her official capacity

ORDER

This employment-discrimination case is before the Court on Plaintiffs' Motion for Default Judgment [32], filed pursuant to Federal Rule of Civil Procedure 55 on January 23, 2012.  Having reviewed Plaintiffs' submission and having held an evidentiary hearing, the Court finds that the motion is well-taken and should be granted.

I.      Facts/Procedural History

On January 27, 2010, Plaintiffs filed their Complaint requesting a judgment for money damages against Defendants Grace Paint Company, Inc. ("Grace Paint"), William C. Grace II, and Angee D. Grace.  The Gamboas allege a pattern of inappropriate comments, propositions, and touching followed by retaliatory termination of employment.  Service of Process was completed upon William C. Grace II and Grace Paint on October 18, 2010.  Service of Process was completed upon Angee D. Grace on October 25, 2010.  On December 14, 2010, all Defendants filed their respective Answers, by and through counsel.

On May 13, 2011, counsel for Defendants filed a Motion to Withdrawal which the Court granted in an Order [23] dated June 16, 2011.  The ordered instructed Defendants to have new

counsel enter an appearance within thirty days and warned Grace Paint that corporations must be represented by a licensed attorney.  The Court also warned that "[f]ailure of the corporate defendant to retain new counsel may result in entry of a default judgment against it."  The Order concluded with an instruction to prior counsel to provide the Order to his former clients.  Defendants never complied with this Order.

Also on June 16, 2011, this Court set a Status Conference to be held July 25, 2011.  The purpose of the conference was to address Defendants' representation, but Defendants failed to appear, prompting the Court to enter a Show Cause Order [24] on July 25, 2011.  That order instructed Defendants to "show cause, in writing, on or before August 8, 2011, as to why a default judgment should not be entered against them for their failure to appear at the status conference and otherwise defend this action."  Defendants never responded.

On August 21, 2011, Plaintiffs filed a motion [26] noting this procedural history and seeking an order striking all of the Defendants' Answers.  The Certificate of Service on the motion indicated that Plaintiffs docketed the motion on ECF and mailed the motion to the individual Defendants.  Defendants never responded, and the Court entered an Order [27] granting the Motion to Strike on December 2, 2011.  On January 2, 2012, Plaintiffs filed Motions [28, 29, 30] for Entry of Default against each of the Defendants, which the Clerk accomplished on January 20, 2012 [31].  Plaintiffs then moved for default judgment on January 23, 2012 [32].  On February 8, 2012, the Court entered an order [33] granting default judgment.

The matter was then set for a February 24, 2012, evidentiary hearing on damages pursuant to Federal Rule of Civil Procedure 55(b)(2).  Although the Court mailed Defendants the notice of hearing at their last known address, Defendants failed to appear and the hearing

proceeded without them. During the hearing, Plaintiffs presented their own testimony along with that of a co-worker, plus certain record evidence. The Court also asked Plaintiffs to submit relevant tax records, which they did. Those records are hereby received into the hearing record. The Court finds that it has jurisdiction over the parties and subject matter of this cause and further finds that Plaintiffs are entitled to Judgment against Defendants.

II.     Standard

In this case, the Court struck Defendants' Answers for ignoring several court orders and failing to defend the case after the withdrawal of their attorneys on June 16, 2011. Absent any answers, the Clerk correctly entered default under Rule 55(a). And because the damages are unliquidated, Plaintiffs pursued the issue by filing a motion under Rule 55(b)(2), which states in relevant part as follows:

> A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.

Fed. R. Civ. P. 55(b)(2).

Whether to enter default judgement under Rule 55(b)(2) rests within the sound discretion of the court. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998); *see Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). But "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Lewis*, 236 F.3d at 767 (quoting *Sun Bank of Ocala v. Pelican Homestead and Savings*, 874 F.2d 274, 276 (5th Cir. 1989)). The factors a court should consider in deciding whether to grant a default judgment include:

3

> whether material issues of fact [exist], whether there has been substantial prejudice, whether the grounds for default are [clear], whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default.

*Lewis*, 236 F.3d at 767. Finally, when a party is in default, the Court accepts pleaded facts as true, but must still determine whether those facts state a claim upon which relief may be granted. *Id.* (upholding district court's denial of entry of default judgment because, even if true, the plaintiff's allegations would not support imposing liability against the defendants).

II.    Analysis

    A.    Procedural Requirements

Based on the testimony at the hearing, the Court concludes that all procedural requirements have been met. More specifically, Defendants William C. Grace, II, and Angee D. Grace are not minors and are of sound mind and competency. Defendant Grace Paint is a corporation and therefore satisfies this procedural requirement. And all three defendants received notice of the hearing more than seven days before it occurred.

    B.    Liability

As stated, the Court cannot enter default judgment unless the admitted facts would state a claim.[1] Here, Plaintiffs' Complaint included a number of claims that would be legally deficient even assuming the truth of all factual allegations. Plaintiffs' counsel readily conceded as much at the evidentiary hearing, withdrawing a number of the more specific claims. After those concessions, and based on factual averments of the Complaint, the Court finds as follows with

---

[1] The Court's February 8, 2012, Default Judgment did not examine whether the pleaded facts successfully stated claims as to all of the pleaded causes of action. Therefore, to the extent that order can be viewed as inconsistent with this order, it is hereby vacated in part.

respect to each count:

      1.     Counts I (Sexual Harassment), II (Wrongful Termination), and III (Public Policy)

Plaintiffs explained during the hearing that they premise the first three counts on 42 U.S.C. § 2000e ("Title VII") and limit those counts to Jennifer Gamboa's claims against Defendant Grace Paint. Accepting the allegations of the Complaint as true, Plaintiff has stated a claim upon which relief can be granted.

      2.     Count IV (Negligence)

Plaintiffs explained that this claim relates to Grace Paint and William Grace. Nevertheless, the Court expressed concern during the hearing whether Plaintiffs' negligence claims are cognizable. For example, it is not apparent that failing to provide an employee handbook constitutes negligence, or that one can negligently violate Title VII. Moreover, it seems that allowing tort damages for negligently violating Title VII would nullify 42 U.S.C. § 1981a. Also unclear is whether the Complaint sufficiently pleads a negligence claim against any party other than Grace Paint. And if a claim exists as to William Grace, the Court questions whether his conduct was negligent or intentional. Finally, it is not clear whether the worker's compensation exclusivity provision would preclude Count IV. The Court has neither researched these issues nor included damages from Count IV in this Order. If Plaintiffs maintain that this count states a viable claim and should be included, then they are instructed to file a supporting memorandum no later than March 15, 2012, addressing these concerns.

      3.     Count V (Negligent Infliction of Emotional Distress)

Plaintiffs explained that this claim is limited to William Grace, but the claim would still fail because Plaintiffs have not suffered a "physical manifestation of injury or demonstrable

physical harm." *Wilson v. Gen. Motors Acceptance Corp.*, 883 So. 2d 56, 65 (Miss. 2004). That requirement does not exist with respect to intentional infliction of emotional distress, *see id.,* but Plaintiffs did not plead such a claim.[2]

    4.     Count VI (Defamation)

Plaintiffs explained that this count relates to derogatory statements made by Angee Grace in the course of a hearing before the Mississippi Employment Security Commission ("MESC") and by William Grace to coworkers at the work site. To prove defamation under Mississippi law, the following elements must be shown:

> (a) a false statement that has the capacity to injure the plaintiff's reputation; (b) an unprivileged publication, i.e., communication to a third party; (c) negligence or greater fault on part of publisher; and (d) either actionability of statement irrespective of special harm or existence of special harm caused by publication.

*Speed v. Scott*, 787 So. 2d 626, 631 (Miss. 2001).

Angee Grace's alleged statements during the MESC hearing are privileged pursuant to Mississippi Code section 71-5-131. *See Raiola v. Chevron U.S.A., Inc.*, 872 So. 2d 79, 85 (Miss. Ct. App. 2004). William Grace's statements at the work site enjoy no such protection, so the question is whether they are actionable.

"Slander usually requires proof of 'special harm,' which is 'the loss of something having economic or pecuniary value.'" *Weible v. Univ. of S. Miss.*, — So. 3d —, 2011 WL 5027203, at *12 (Miss. Ct. App. Oct. 18, 2011) (citing *Speed*, 787 So. 2d at 632 (quoting Restatement (Second) of Torts § 575 cmt. b)). But the words are considered defamation per se when they

---

[2]Plaintiffs submitted a proposed order that conceded the lack of injury but argued that such evidence is not required when the conduct meets the test for intentional infliction of emotional distress. But as stated, the Complaint does not include such a claim.

"impute[] to a female a want of chastity." *Speed*, 787 So. 2d at 632.

According to the Complaint, William Grace called Jennifer Gamboa—who is a married woman—a "nymphomaniac" in the presence of other workers, and stated that she had flirted with him. A co-worker also testified that Grace accused Jennifer Gamboa of being promiscuous. The words would impute a want of chastity. *See Interstate Co. v. Garnett*, 122 So. 373 (Miss. 1929). Thus, Jennifer Gamboa has stated a claim for defamation against William Grace. Jennifer Gamboa also testified that she suffered mental distress from the actions, for which she sought professional counseling. Having viewed her emotions at the hearing, the Court is satisfied that she has established genuine emotional distress and mental anguish. Finally, the unrebutted allegations of the Complaint state that because of the defamation, she could not find employment.

7.     Count VII (Retaliation)

"Title VII prohibits retaliation . . . against individuals who oppose discriminatory employment practices or participate in complaints or investigations of employment practices prohibited by [T]itle VII." *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 249 (5th Cir. 1997) (citing 42 U.S.C. § 2000e–3(a)). According to the Complaint, as confirmed by the hearing testimony, Defendants terminated Jennifer Gamboa's employment for complaining to the Equal Employment Opportunity Commission about William Grace's sexual advances. The record is likewise sufficient to show that Defendants constructively discharged Michael Gamboa for refusing to force his wife to drop the charges.[3]

---

[3]The "constructive retaliation" claim in Count VIII is merely a restatement of the retaliation claim in Count VII.

7

C.     Damages

Plaintiffs seek actual and consequential damages, back pay with interest, front pay, future earning capacity, emotional distress and punitive damages. The Court will examine each.

1.     Title VII

a.     Back Pay

Plaintiffs are entitled to back pay under Title VII. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 253 (1994). Here, Jennifer Gamboa is entitled to back pay from her date of termination on June 19, 2009, until the date this judgment is entered (142 weeks), minus the amount mitigated. According to her testimony, she was earning $12 per hour before the conflict. But the number of hours worked is not clear in the record as her pay stubs [Ex. P–2] indicate that her weekly hours varied. The Court therefore took the amount reflected on her W–2 from Grace Paint for 2009, added the $150 she was shorted on her last paycheck ($5 per hour for 30 hours), and divided by the number of weeks worked that year (24). This provided an average weekly net of $417.75. Thus, back pay for the 142 weeks since termination totaled $59,320.50. The Court then subtracted $1,920 from this amount to account for her earnings since the termination of employment (30 hours a week x $8/hour for two months). The total back pay award is therefore $57,400.50 plus interest calculated at 0.18%.

Michael Gamboa is entitled to back pay from his date of termination on July 1, 2009, until the date this judgment is entered (140 weeks), minus the amount mitigated. Like his wife, the hours reflected on Ex. P–2 from Grace Paint are not consistent, so the Court applied the same calculation starting with the $12,980 reflected on his W–2 from Grace Paint for 2009 plus the $120 he was shorted on his last pay check (40 hours x $3/hour) divided by the weeks worked in

2009 (26) for an average weekly pay of $503.85.  Thus, back pay in the 140 weeks since he was terminated totaled $70,538.46.

As for mitigation, Mr. Gamboa submitted tax records showing total earnings in 2010 of $5,404.  He also testified that he has had steady employment the last two months at $12 per hour, but his testimony was spotty as to his other work.  The Court therefore subtracts the $5,404 in 2010 and estimates the same amount for 2011 through the present.[4]  As a result, Mr. Gamboa is entitled to back pay of $59,730.46 plus interest calculated at 0.18%.

                b.       Front Pay

Successful Title VII plaintiffs are likewise entitled to front pay if reinstatement is not available.  *See Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001).  Here, Grace Paint is no longer in business.  The Gamboas are therefore awarded front pay as follows.

Given the nature of the industry, Jennifer Gamboa's front pay should be limited to a period of one (1) year, totaling $21,723.  As for Michael Gamboa, he testified that he is now employed, but earning $12 per hour rather than the $15 per hour he earned at Grace Paint.  He is therefore awarded the difference between his current employment and what he earned at Grace Paint.  But again, his hours are not clear, so the Court will use the average weekly hours while at Grace Paint ($500 per week ÷ 15 = 33.33).  His front pay award for a period of one (1) year totals $5,200.00 (33.33 hours x $3 x 52 weeks).

                c.       Compensatory and Punitive Damages

In 1991, Congress expanded the available remedies a successful Title VII plaintiff may

---

[4]Gamboa is able bodied, and the Court sees no reason why he could not find employment.  Thus, to the extent the estimate overstates what he actually earned, then it represents the amount he failed to mitigate.

9

recover when it passed 42 U.S.C. § 1981a. Under § 1981a, "the complaining party may recover compensatory and punitive damages," among others. But those damages are capped depending on the size of the employer:

> The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party (A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000.

42 U.S.C. § 1981a(b)(3). "For the purposes of Title VII's damages cap, the relevant unit of accounting is the litigant, not the legal theory." *Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 264 (5th Cir. 2011) (citation and quotation omitted).

The Court first finds that the Gamboas are entitled to punitive damages. Punitive damages are awarded under § 1981a "if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). Here, the Graces were owners of the company and their conduct is properly imputed to the statutory employer. Second, the allegations of the Complaint—as supported by the record evidence at the hearing—demonstrate a blatant disregard for Title VII and an intentional course of retaliation. Defendants actually notified Jennifer that she was being terminated for complaining, and they cut both Michael and Jennifer's hourly pay rate on their last checks for the amounts owed before termination. Defendants then, according to the unrebutted record, tried to force Michael Gamboa to persuade his wife to drop her charge, and when that failed, Defendants asked a co-worker to lie to support a pretextual justification for the

employment decision.  In light of all of this, Michael and Jennifer Gamboa are entitled to $50,000 each in punitive damages—an amount the Court would likely increase but for the caps.[5]

Finally, Jennifer established a claim for emotional distress and mental anguish—for which she sought professional care—but the cap has already been met.  Michael Gamboa suffered emotional distress and mental anguish, but to a far lesser extent.  But again, the cap has been met which renders the discussion moot.[6]

        2.        State Claims

Jennifer Gamoba stated a claim for defamation against William Grace, and sufficiently established emotional distress arising from that claim.  The Court awards $20,000 for mental anguish associated with the defamation claim.  These damages are in addition to the mental anguish awarded for the Title VII violations.  The Court concludes, however, that the defamation claim is not alone sufficient to warrant punitive damages.  Finally, accepting the pleaded facts as true, the defamation prevented Gamboa from working, and William Grace is therefore jointly and severally liable with Grace Paint for back pay and front pay.

IT IS, THEREFORE ORDERED AS FOLLOWS:

1.        Jennifer Gamboa is awarded back pay totaling $57,400.50 plus interest calculated at 0.18%;

2.        Michael Gamboa is awarded back pay totaling $59,730.46 plus interest calculated at 0.18%;

---

[5] It should be noted that the Court must assume the veracity of the pleaded facts due to the default.

[6] If for some reason this matter reaches the Fifth Circuit on appeal, the Court would alternatively set Jennifer's compensatory damages at $20,000 and Michael's at $5,000.

3.     Jennifer Gamboa is awarded front pay totaling $21,723;

4.     Michael Gamboa is awarded front pay totaling $5,200;

5.     Jennifer Gamboa is awarded compensatory and punitive damages on her Title VII claims totaling $50,000;

6.     Michael Gamboa is awarded compensatory and punitive damages on his Title VII retaliation claim totaling $50,000; and

7.     Jennifer Gamboa is awarded $20,000 in damages related to her defamation claim.

IT IS FURTHER ORDERED that Plaintiffs shall by March 15, 2012, submit either additional briefing supporting the negligence claim or notify the court that the claim has been abandoned. By that same date, Plaintiff shall notify the Court whether this matter may be closed.

**SO ORDERED AND ADJUDGED** this the 7th day of March, 2012.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE